[Cite as *State v. McGowan*, 2015-Ohio-4430.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** | |
| Plaintiff-Appellee, | : | | |
| - vs - | : | CASE NO. 2015-A-0015 | |
| ANDRE MCGOWAN, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CR 00378.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Michelle M. French,* Law Offices of Michelle M. French, LLC, P.O. Box 293, Jefferson, OH 44047 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Andre McGowan, appeals from the judgment of the Ashtabula County Court of Common Pleas, convicting him of one count of robbery and one count of kidnapping. We affirm.

{¶2} On March 15, 2014, Branch Manager, Crystal Fairbanks, and Teller, Cheryl Bennet-Root, were in the vault of the Key Bank, located in Geneva, Ohio. At 11:48 a.m., Fairbanks observed appellant as he leapt over the teller counter, landing

approximately an inch or two from her. Appellant stated "I need money" two times and ordered both women to "get down." Appellant was wearing a white mask over his face, was dressed in black, with a black hoodie on his head, and wearing red and white shoes. The women advised appellant the money was in the vault after which he stated he needed a bag. Bennet-Root pointed to an orange carrier bag; appellant repeated the need for a bag. Bennet-Root retrieved the bag and handed it to appellant. When Fairbanks stood up to assist Bennet-Root, appellant ordered her to "get down" again. Appellant loaded the bag with $32,500, touched the women on the back stating "Thank you, ladies," and left the bank.

{¶3} Neither women observed appellant with a weapon; Bennet-Root, however, testified she felt appellant possessed a weapon. Both women testified they were very frightened by the ordeal and felt threatened throughout the incident. They also testified they complied with appellant's orders because they believed appellant would harm them if they were uncooperative.

{¶4} Shortly after appellant left, Officer Derrick Yopp of the Geneva City Police Department was dispatched to the location. The officer was unable to locate the suspect. He entered the bank and took statements from Fairbanks and Bennet-Root. The officer noted both women appeared frightened and had tears in their eyes.

{¶5} On June 24, 2014, at 12:47 p.m., appellant entered the First Merit Bank in Geneva, Ohio. Appellant was "covered from head to toe" and wearing gloves. Bank Manager Wendy Doyle was at the tellers' counter and Bank Teller, Sandra Cowger, was assisting a customer at the drive-through window. Appellant jumped over the teller counter and ordered the women "get down on the f *** ing ground." Appellant asked Doyle where the money was; Doyle directed appellant to the teller drawer where she

2

was working. He removed the money and asked if there was any more. Doyle responded in the negative, thinking appellant was referring to her drawer. Appellant advised Doyle that she "better not be f***ing with [him]." Doyle then directed appellant to a separate teller drawer. He removed the money from that drawer, placed it in a garbage bag, told the women to have a nice day, and fled the bank. There was no evidence that appellant possessed a weapon during this incident.

{¶6} Doyle stated she complied with appellant's orders because he yelled at her and she did not want to be "beat up." Doyle testified that, even though appellant did not expressly threaten her with injury or death, she was afraid and believed a "threat was implied" when appellant stated, "you better not be f***king with me." Doyle also testified appellant appeared to have great strength given the manner in which he bounded over the teller line. Because appellant's face was covered, Doyle believed appellant was not concerned about the consequences of his actions. She testified that, given the circumstances of the incident, "if he's desperate enough to rob a bank he's desperate enough to hurt us to do it."

{¶7} Further, Cowger testified she immediately dropped to the floor upon appellant's order. Cowger stated she was in fear because appellant's command was "very stern and demanding." She remained on the floor until appellant left the bank because she "was in fear for [her] life, and wasn't willing to take that chance."

{¶8} After appellant left the bank, Doyle ran out the door to obtain a description of his vehicle and lock the entrance. Doyle subsequently called 911. After an audit, the bank determined appellant took $3,507 from Doyle's drawer and $3,654 from the other drawer.

3

{¶9} Officer Joe Cooper of the Geneva City Police Department was dispatched to the bank as a result of the incident. Dispatch advised the officer that there was a witness following the suspect's vehicle. He received a description of the vehicle and proceeded to its location. After locating the vehicle, he initiated a traffic stop, but waited for backup before approaching.

{¶10} Once Officer Cooper made contact with the vehicle, he observed a woman driving with appellant as the passenger. The officer noted red dye on the back seat and money on the floor board with dye on it. There were black parachute pants on the rear floor board and a gray hoodie. White gloves were also on the rear floor board of the vehicle. $4,811 was found spread throughout the vehicle.

{¶11} Officer Roger Wilt of the Geneva City Police Department was on patrol on June 24, 2014, when he observed paper money on the roadway. He exited his cruiser and noticed a plastic bag stuffed with cash and a blue hat. He observed a trail of money with red dye throughout the street. He contacted dispatch and was advised of the First Merit Bank robbery.

{¶12} Eventually, after his arrest, appellant was interviewed by Officer Wilt. Appellant advised the officer that his girlfriend drove him to the bank and he had her park the vehicle. After donning his hoodie, he exited the vehicle, put a red bandana on his face, and a hat on his head. Appellant admitted he jumped over the tellers' counter and ordered the two tellers to the get to the floor. After taking money from the drawers, he fled the bank with the money in a garbage bag. Shortly after he and his girlfriend left the scene, the dye pack exploded and they had difficulty breathing. Appellant advised his girlfriend to pull over and he threw the bag of money out of the car along with his blue hat and red bandana.

4

{¶13} Appellant additionally confessed to the March 15, 2014 robbery. He explained he drove himself to Geneva, parked across from the Key bank, and left his vehicle running while he entered the bank. He stated he jumped on the counter, and ordered the tellers to help him place money in a bag. He then fled the scene from the same door he entered. He confessed he took $32,000 from the robbery. He stated he was wearing a black hoodie, black pants, and red and white Nike shoes at the time of this incident.

{¶14} Appellant was indicted for two counts of robbery, in violation of R.C. 2911.02, felonies of the third degree (one for each incident); two counts of kidnapping, in violation of R.C. 2905.01, felonies of the second degree (one for each incident); one count of theft, in violation of R.C. 2913.02, a felony of the fifth degree (relating to the June incident); and one count of grand theft, in violation of R.C. 2913.02, a felony of the fourth degree (relating to the March incident).

{¶15} On September 4, 2014, appellant filed a motion to suppress and a motion for relief from prejudicial joinder. The former was denied, the latter was granted.

{¶16} A jury trial commenced on October 27, 2014 on count one (robbery), count two (kidnapping), and count three (theft), each of which related to the June 24, 2014 incident. Appellant was later found guilty of robbery and theft, but acquitted of kidnapping. A jury trial began on December 8, 2014 on count four (robbery), count five (kidnapping), and six (grand theft), each of which related to the March 15, 2014 incident. Appellant was ultimately found guilty on all counts.

{¶17} At sentencing, the trial court determined that count one (robbery) and three (theft) would merge for purposes of sentencing. The court further determined that count four (robbery), five (kidnapping), and six (grand theft) would also merge. The

5

state subsequently elected to have appellant sentenced for robbery, as charged in count one, and kidnapping, as charged in count five. Appellant was then sentenced to a term of 36 months for robbery and a term of seven years for kidnapping. The court ordered the terms to be served consecutively. Appellant now appeals and assigns two errors for our review. Appellant's first assignment of error asserts:

{¶18} "The trial court erred to the prejudice of the appellant by failing to grant the appellant's motion for a mistrial in violation of the appellant's constitutional rights."

{¶19} Under this assigned error, appellant argues the trial court committed prejudicial error by denying his motion for a mistrial when the officer testifying for the state implicated appellant in a separate robbery after the court granted appellant's motion for relief from prejudicial joinder and ordered separate trials.

{¶20} During appellant's second trial, which related to the robbery committed on March 15, 2014, Officer Yopp was asked on direct examination how the investigation of the Key Bank robbery had progressed. He discussed the various leads he had pursued, but testified the leads never materialized. He stated, however, he received a call in June indicating "there was another bank robbery and that the suspect fit the description of - -." Defense counsel immediately objected and moved for a mistrial. The trial court overruled the motion and provided the jury with a curative instruction. Appellant contends the curative instruction was insufficient to overcome the prejudicial nature of Officer Yopp's statement implicating him in a separate bank robbery. We do not agree.

{¶21} A court should be circumspect when considering a motion for mistrial and grant the same only when the ends of justice so require and a fair trial is no longer possible. *State v. Jenkins*, 11th Dist. Trumbull No. 2006-T-0058, 2007-Ohio-4227, ¶44,

6

citing *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001).  The decision to grant or deny a mistrial is a matter within the trial court's discretion.  *Jenkins*, *supra*.

{¶22} The record demonstrates that appellant confessed to committing the March 15, 2014 Key Bank robbery to Officer Wilt.  And Officer Wilt testified that appellant provided a detailed verbal confession then a written confession. There was consequently no issue of identity in this matter and thus no issue regarding whether Officer Yopp's testimony, potentially implicating appellant in a separate robbery, had any prejudicial impact on appellant's defense.  Appellant admitted to committing the acts on March 15, 2014 which led to the indictment arising from those facts. The only issue for trial, therefore, was whether appellant's actions involved a felony-four grand theft or rose to the level of a felony-three robbery. Thus, there was no concern that Officer Yopp's statement could be used by the jury for the forbidden purpose of connecting appellant with a separate robbery in order to demonstrate he committed the March crime.

{¶23} Under the circumstances, we fail to see how the officer's statement rendered appellant's trial fundamentally unfair so as to run afoul of his due process rights.  The officer's statement relating to the separate bank robbery suspect, at worst, provided the jury with information regarding an investigative lead in the March robbery. Because, however, identity was not an issue in the case, any inference connecting appellant to "the suspect" in the June robbery, was ultimately inconsequential.  And even if one viewed the officer's testimony as technically problematic (in light of the court's order granting relief from prejudicial joinder), any potential prejudice was remedied by the curative instruction. We therefore hold the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

7

{¶24} Appellant's first assignment of error lacks merit.

{¶25} Appellant's second assignment of error provides:

{¶26} "The appellant's conviction for robbery in violation of Ohio Revised Code Section 2911.02 is neither supported by the sufficiency of the evidence nor the manifest weight of the evidence."

{¶27} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9 (11th Dist.).

{¶28} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994).

{¶29} We must first point out that appellant challenges the juries' verdicts on each separate count of robbery. Although appellant was found guilty of both the March 15, 2014 and the June 24, 2014 robberies, he was convicted *only* of the June 24, 2014 robbery. With respect to the March 15, 2014 trial, the jury returned a verdict of guilty on one count of robbery, one count of kidnapping, and one count of grand theft. The court determined these crimes were allied offenses of similar import and merged them for purposes of sentencing. "R.C. 2941.25(A) clearly provides that there may be only *one*

8

*conviction* for allied offenses of similar import. Because a defendant may be convicted of only one offense for such conduct, the defendant may be sentenced for only one offense. *See State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶43" *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶26.

**{¶30}** After merging the crimes of which appellant was found guilty for the March 15, 2014 incident, the state elected to proceed to sentencing on the kidnapping charge. Accordingly, even though the jury found appellant guilty of robbery for the March 15, 2014 incident, he was convicted *only* of kidnapping. Thus, we need not reach appellant's arguments relating to the sufficiency and weight of the evidence pertaining to the robbery conviction resulting from the March 15, 2014 incident.

**{¶31}** With respect to appellant's robbery conviction, appellant argues the state failed to establish the element of force to convict him. We do not agree.

**{¶32}** The robbery statute, R.C. 2911.02, states, in pertinent part:

**{¶33}** "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

**{¶34}** "* * *

**{¶35}** "(3) Use or threaten the immediate use of force against another."

**{¶36}** "Force" is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The element of force, as it pertains to the offense of robbery, is satisfied "if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." *State v. Davis*, 6 Ohio St.3d 91 (1983), paragraph one of the syllabus. In order to establish the element of

9

"force" for purposes of robbery, the threat of violence, compulsion, or constraint may be implied from the perpetrator's demeanor and tone of voice and need not be direct or explicit. *State v. McArthur,* 11th Dist. Lake No. 2006-L-260, 2007-Ohio-7133, ¶36, *In re Burton,* 160 Ohio App.3d 750, 2005-Ohio-2210, at ¶7 (1st Dist.) citing *State v. Bush*, 119 Ohio App.3d 146, 150 (2d Dist.1997).

**{¶37}** With respect to the June 24, 2014 robbery of which appellant was convicted, the evidence demonstrated that appellant jumped over the tellers' counter into an area of the bank occupied exclusively by bank employees. Appellant commanded Wendy Doyle and Sandra Cowger to "get down on the f***ing ground" and demanded money. Doyle directed appellant to her teller's drawer. After appellant removed the cash and Doyle indicated there was no additional money, appellant warned that Doyle "better not be f***ing with me." Doyle testified appellant seemed "very strong" given the manner in which he bounded over the counter; she further believed appellant's warning was an implied threat that would lead to "negative consequences" if she did not comply with his orders. Cowger echoed Doyle's testimony, stating the entirety of the event placed her in fear for her life.

**{¶38}** The foregoing testimony demonstrates that appellant, despite not overtly threatening the women, implicitly threatened the immediate use of force if they did not comply. Appellant's aggressive entry into the tellers' area as well as the tone and content of his language was sufficient to justify the reasonable fear that appellant would harm Doyle, Cowger, or both if they did not meet his demands. We therefore hold there was sufficient, credible evidence to support the conviction for the robbery occurring on June 24, 2014.

10

**{¶39}** Although appellant does not challenge his conviction for kidnapping, he does challenge the force element relating to the merged robbery conviction. We shall therefore address the validity of the kidnapping for purposes of comprehensiveness. For the March 15, 2014 incident, appellant was convicted of kidnapping, in violation of R.C. 2905.01(A)(2), which provides:

> **{¶40}** (A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

> **{¶41}** * * *

> **{¶42}** (2) To facilitate the commission of any felony or flight thereafter;

**{¶43}** As discussed above, appellant, on March 15, 2014, entered the Key Bank in Geneva, Ohio, leapt over the tellers' counter, and stated, "I need money." Appellant landed approximately an inch or two from Crystal Fairbanks, the bank's manager, such that he was "in her face." He subsequently ordered Fairbanks and Teller, Cheryl Bennet-Root, to the ground. When Bennet-Root was directed to retrieve a bag into which appellant intended on placing the money, Fairbanks stood up to help. Appellant, however, again demanded Fairbanks to remain on the floor. Appellant subsequently fled with over $32,000. Each of the women testified they felt threatened, were frightened, and complied with appellant's orders because they believed appellant would harm them if they were uncooperative.

**{¶44}** The foregoing facts demonstrate that even though appellant did not expressly threaten the women, his actions suggested that if they did not obey him, they would be harmed. Under the circumstances, appellant's surprising and assertive entry, his physical proximity, particularly to Fairbanks, as well as his orders, would reasonably induce individuals in Fairbanks' and Bennet-Root's position to surrender the money

11

against their will. These facts, therefore, are sufficient, at the very least, to establish the "force" (by compulsion) element or, at the very least, the threat element of kidnapping.

{¶45} Further, although Fairbanks stood up to assist Bennet-Root, appellant immediately ordered her to the ground a second time. This clearly functioned to restrain the liberty of the Fairbanks and facilitated the commission of the felony-three robbery as well as his subsequent flight. Appellant's conviction for kidnapping is therefore supported by sufficient evidence and is consistent with the weight of the testimony submitted.

{¶46} Appellant's second assignment of error lacks merit.

{¶47} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.